## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| William DuBuske, Michael Duchaine, and Gary Maynard, on behalf of themselves and all others similarly situated, | Civil Action No.: 18-cv-11618 |
| Plaintiffs, | |
| vs. | |
| PepsiCo, Inc., the Employee Benefits Board, the PepsiCo Administration Committee, and John/Jane Does 1-50 | CLASS ACTION |
| Defendant. | |

## COMPLAINT

Plaintiffs William DuBuske, Michael Duchaine and Gary Maynard, by and through their attorneys, on behalf of themselves and all others similarly situated, based on personal knowledge with respect to their own circumstances and based upon information and belief pursuant to the investigation of their counsel as to all other allegations, allege the following.

## INTRODUCTION

1.      This is a class action against Defendant PepsiCo, Inc. ("Pepsi") and the fiduciaries responsible for management of the PepsiCo Salaried Employees Retirement Plan (the "Plan") (collectively, "Defendants") concerning the failure to pay benefits under the Plan that are actuarially equivalent to a single life annuity for the life of the plan participant, as required by Section 205 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1055.  By not offering actuarially equivalent pension benefits, Defendants are causing retirees to lose part of their vested retirement benefits in violation of ERISA § 203(a), 29 U.S.C. § 1053(a).

2.      Under the Plan, workers accrue retirement benefits in the form of a single life annuity ("SLA"), a payment stream that starts when they retire and ends when they die.  The amount of the SLA is based on their wages and years of service with Pepsi, not current life expectancies or interest rates.

3.      ERISA requires that pension plans offer married retirees the option of receiving a payment stream for their life and their spouse's life after the retiree dies (a "joint and survivor annuity").  ERISA § 205(d), 29 U.S.C. § 1055.  A joint and survivor annuity is expressed as a percentage of the benefit paid during the retiree's life.  For example, a 50% joint and survivor annuity provides a surviving spouse with 50% of the amount that was paid during the retiree's life.  Pepsi offers 50%, 75% and 100% joint and survivor annuities.

4.      When retirees choose a joint and survivor annuity, they receive lower monthly pension payments than they would if they chose a SLA in exchange for their spouses receiving payments after their deaths.  ERISA requires that joint and survivor annuities be "actuarially equivalent" to an SLA, ERISA §§ 205(d)(1)(B) and (2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B) and (2)(A)(ii), meaning that the present value of the payment streams must be the same.

5.      Actuarial assumptions are applied to calculate the present value of the future payments of a joint and survivor annuity.  These assumptions are based on a set of mortality tables and long-term interest rates.  The present values of the joint and survivor annuities must equal the present value of the SLA in order to establish actuarial equivalence between the two forms of benefit payment streams.

6.      Mortality rates have improved over time with advances in medicine and better collective lifestyle habits. People who are retiring now are expected to live longer than those who retired in previous generations.   Older morality tables predict that people will die at a faster rate

than current mortality tables.  Using an older mortality table with accelerated mortality rates decreases the present value of the joint and survivor annuity and, ultimately, the monthly payment that retirees receive under a joint and survivor annuity.

7.     The mortality rate and the interest rate collectively affect whether an optional benefit is actuarially equivalent to a SLA.  Specifically, pension plans traditionally use the mortality rate and interest rate together to calculate a "conversion factor" which is used to determine an equivalent benefit between the default SLA and the joint and survivor annuity selected by a retiree.

8.     Pepsi sponsors the Plan for its eligible employees and the eligible employees of certain subsidiaries and affiliates.  Under the terms of the Plan, Pepsi promises Plan participants a retirement income that is based on their income and length of service.

9.     The Plan offers alternate optional benefits (such as joint and survivor annuities) to participants.  However, in violation of ERISA, the annuities provided to retirees and their beneficiaries who elect several of these alternate benefits are ***not*** actuarially equivalent to the SLA owed to the retiree.  Rather than using reasonable interest and mortality rates to set the conversion factor, the Plan instead sets a conversion factor for each category of joint and survivor annuity that is lower than the conversion factor that would be generated using reasonable market mortality tables and interest rates.

10.     Accordingly, the unreasonable joint and survivor annuity conversion factors used by the Plan result in pension payments that are ***not*** actuarially equivalent to a retiree's SLA, but instead are materially ***lower*** than the actuarially equivalent benefits that retirees and their beneficiaries would receive if the conversion factors were calculated pursuant to reasonable market mortality tables and interest rates.

11.    Plaintiffs accordingly seek an order from the Court reforming the Plan to conform to ERISA, payment of future benefits in accordance with the reformed Plan as required under ERISA, payment of amounts improperly withheld, and such other relief as the Court determines to be just and equitable.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA").

13.    This Court has personal jurisdiction over the Defendant because it is headquartered and transact business in, or resides in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process.

14.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the violations of ERISA occurred in this District and Defendant resides and may be found in this District.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does business in this District and a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

### Plaintiffs

15.    Plaintiff William DuBuske is a resident of Ford, New Jersey and a Participant in the Plan with a joint and survivor annuity.  Mr. DuBuske worked for Pepsi's Tropicana division (which participates in the Plan), and for Tropicana prior to Pepsi's acquisition thereof, for

approximately 35 years, until October 2018. Under the terms of the Plan, Mr. DuBuske and his ex-wife are beneficiaries of a joint and survivor annuity.

16.     Plaintiff Michael Duchaine is a resident of Lacey, Washington and a Participant in the Plan. Mr. Duchaine worked for Pepsi's Frito-Lay division (which participates in the Plan) from 2004 through 2014. Under the terms of the Plan, Mr. Duchaine and his spouse have elected and are receiving a joint and survivor annuity.

17.     Plaintiff Gary Maynard is a resident of Jonesboro, Arkansas, and a Participant in the Plan. Mr. Maynard worked for Pepsi's Frito-Lay division (which participates in the Plan) from 2002 through 2014. Under the terms of the Plan, Mr. Maynard and his spouse have elected and are receiving a joint and survivor annuity.

**Defendants**

18.     Defendant PepsiCo, Inc. ("Pepsi") is an American multinational food, snack and beverage corporation with its principle place of business in Harrison, New York. Pepsi is the sponsor the Plan.

19.     The PepsiCo Administration Committee ("PAC") is the committee that has fiduciary responsibility for the administration and operation of the Plan as set forth in the Plan document. The Plan names the PAC as the Administrator of the Plan. The PAC is a named fiduciary of the Plan.

20.     Defendant Employee Benefits Board (the "EBB") is a committee appointed by the Audit Committee of Pepsi's Board of Directors that has fiduciary responsibility to appoint the members of and monitor the actions of, *inter alia*, the PAC.

21.     John/Jane Does 1 through 50, inclusive, are the individual members of the PAC, EBB or any other committee(s) responsible for administering the Plan.  Their names and identities are not currently known.

22.     The PAC, EBB and their members are fiduciaries for the Plan within the meaning of ERISA § 3(21(A), 29 U.S.C. § 1002(21)(A), because they exercise discretionary authority or control respecting the management of the Plan and authority or control respecting the management or disposition of Plan assets.

**APPLICABLE ERISA REQUIREMENTS**

23.     ERISA requires that benefits from a defined benefit plan be paid in the form of a qualified joint and survivor annuity (a "QJSA") unless the participant, with the consent of his or her spouse (if applicable), elects an alternative form of payment, making the QJSA the default benefit under an ERISA plan for employees who are married.  ERISA § 205(a) and (b), 29 U.S.C. § 1055(a) and (b).

24.     A QJSA is an annuity for the life of the plan participant with a survivor benefit for the life of the spouse that is not less than 50%, and not greater than 100% of the annuity payable during the joint lives of the participant and the spouse.  ERISA § 205(d)(1), 29 U.S.C. § 1055(d)(1). For example, if a plan participant receives $1,000 per month under a 50% joint and survivor annuity, the spouse will receive $500 a month after the participant's death.

25.     ERISA requires that a QJSA be the actuarial equivalent of a SLA for the life of the participant.  ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B).  A QJSA "must be as least as valuable as any other optional form of benefit under the plan at the same time."  26 C.F.R. § 1.401(a)-20 Q&A 16.

26.     Pension plans may also offer participants alternative forms of survivor annuities, known as qualified optional survivor annuities ("QOSA"). ERISA § 205(d)(2), 29 U.S.C. § 1055(d)(2)); *see also* 26 U.S.C. § 417(g). For example, a pension plan might offer a QJSA in the form of a 50% joint and survivor annuity, while offering 75% and 100% joint and survivor annuities as QOSAs. Other common forms of QOSAs are "certain and life" options whereby a participant (and beneficiary) receives benefits for a specified minimum number of years, regardless of how long the participant lives. ERISA requires that QOSAs, like QJSAs, be the actuarial equivalent of a SLA for the life of a participant. ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A).

27.     ERISA also requires that defined benefit plans provide a qualified pre-retirement survivor annuity ("QPSA"). ERISA § 205(a)(2), 29 U.S.C. § 1055(a)(2). A QPSA is an annuity for the life of the participant's surviving spouse (*e.g.*, a beneficiary) if the participant dies before reaching the plan's normal retirement age. ERISA § 205(e), 29 U.S.C. § 1055(e). ERISA requires that a QPSA be actuarially equivalent to what the surviving spouse would have received under the plan's QJSA and any QOSAs. *Id.* at § 205(e)(1)(A), 29 U.S.C. § 1055(e)(1)(A).

28.     ERISA does not require that pension plans offer lump-sum distributions of vested benefits to retirees upon their retirement. ERISA § 205(g), 29 U.S.C. § 1055(g). If plans offer a lump-sum distribution as an optional benefit, Section 205(g)(3) of ERISA, 29 U.S.C. § 1055(g)(3), requires that the interest rate and mortality table specified in annually updated Treasury regulations be used to determine the actuarial equivalence of a lump-sum distribution of a plan's standard benefit.

29.     For QJSAs, QOSAs and QPSAs, however, while the interest rate and mortality table specified by the Treasury regulations **may** be used, a plan is permitted to use alternative actuarial assumptions, so long as they are reasonable.

30.     The Treasury regulations for the Tax Code provision corresponding to ERISA § 205 (26 U.S.C. § 401(a)(11)) provide that a QJSA "must be at least the actuarial equivalence of the normal form of life annuity…on the basis of consistently applied **reasonable** actuarial factors." 26 C.F.R. 1.401(a)-11(b)(2) (emphasis added).

31.     Treasury regulations concerning disclosures to plan participants similarly provide that optional benefits, like a QOSA, must be compared to a QJSA using:

> . . . a single set of interest and mortality assumptions that are *reasonable* and that are applied uniformly with respect to all such optional forms payable to the participant . . . .  For  this purpose, the reasonableness of interest and mortality assumptions is determined without regard to the circumstances of the individual participant.  In addition, the applicable mortality table and applicable interest rate (as prescribed by the Treasury) are considered reasonable actuarial assumptions for this purpose and thus are permitted (but not required) to be used.

26 C.F.R. 1.417(a)(3)-1(c)(2)(iv)(B)(emphasis added).

32.     Section 203(a) of ERISA, 29 U.S.C. § 1053(a), provides that an employee's right to his or her vested retirement benefits is non-forfeitable.  The Treasury regulation for the Tax Code provision corresponding to ERISA § 203 (26 U.S.C. § 411), states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."  26 C.F.R. § 1.411(a)-4(a).

## SUBSTANTIVE ALLEGATIONS

## I.     THE PLAN

33.     Pepsi established the Plan to "provide[] retirement benefits to Participants who retire or become disabled prior to retirement and, in some circumstances, for the surviving spouses

or designated beneficiaries of such participants." *See*, *e.g.*, Plan Document at Introduction.  Pepsi sponsors the Plan.

34.     All participants and beneficiaries in the Plan are current and former employees of Pepsi or one of its subsidiaries or affiliates, spouses of current and former employees, or other beneficiaries.

35.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(a)(A).

36.     The Plan is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

37.     The Plan is administered by Pepsi and the PAC.  The PAC has five members appointed by the EBB, and the Chair of the PAC is Pepsi's Senior Vice President, Total Rewards. The EBB members are appointed by the Audit Committee of Pepsi's Board of Directors.

38.     Under the terms of the Plan, participants are entitled to receive a monthly pension that begins at the Normal Retirement Benefit date of age 65. Participants' monthly pensions are based on a percentage of their compensation during their highest-paid five (5) consecutive years of service and how many years they worked for Pepsi.

39.     The Plan provides that the normal form of retirement benefit for unmarried participants is a SLA.  For married participants, the normal form of benefit, and the Plan's QJSA, is a 50% joint and survivor annuity.  The Plan further provides that the 50% joint and survivor annuity form of benefit shall be the actuarial equivalent of a SLA.

40.     The Plan provides several QOSAs, including joint and survivor annuities that provide payments to the surviving spouse that are 75% or 100% of the benefit amount payable to the participant during the joint lives of the participant and the spouse.  The Plan also offers "certain

and life" form of benefits where participants can receive pension benefits for a minimum period of 120 months.  Again, the Plan provides that this elective benefit must be actuarially equivalent to a SLA.

41.    The Plan provides a QPSA to a surviving spouse if a vested participant dies before age 65.  The QPSA is the Plan's QJSA (*i.e.*, a 50% joint and survivor annuity) payable as if the member had retired on the date of his death.

## II.    The Plan's Optional Forms of Benefit Are Not Actuarially Equivalent to a Single Life Annuity.

42.    Participants in the Plan accrue benefits in the form of a SLA.  To convert a SLA into a QJSA, QOSA or QPSA, the present value of the ***aggregate*** (*i.e.,* total) future benefits that the participant (and, if applicable, the beneficiary) is expected to receive under both the SLA and the alternative form of benefit must be determined.

43.    There typically are two main components to calculating the present value of the SLA and the alternative benefit: an interest rate and a mortality table.  An interest rate is used to determine the present value of each future payment, and the interest rate that a defined benefit plan uses should be based on prevailing market conditions.  A mortality table is a series of rates which predict how many people at a given age will die before attaining the next higher age. More recent tables are "two-dimensional" in that the rates are based not only on the age of the individual but the year of birth.  Since the 1980s, the life expectancies in mortality tables have steadily improved.[1]

---

[1] The Society of Actuaries, an independent actuarial group, publishes the mortality tables that are the most widely-used by defined benefit plans when doing these conversions.  New mortality tables were published in 1971, 1983, 1984 (the "UP 1984"), 1994 (the "1994 GAR"), 2000 (the "RP-2000") and 2014 ("RP-2014") to account for changes to a population's mortality experience.  In the years between the publication of a new mortality table, mortality rates are often "projected" to future years to account for expected improvements in mortality.  For example, the RP-2014 mortality table is commonly projected by actuaries using a mortality improvement scale to account for additional reductions in mortality rates that have occurred since 2014.

44.     The present values of the SLA and the alternative benefit are then compared in a ratio to create a "conversion factor" (or "annuity factor") that is applied to the SLA to determine the amount of the alternative benefit that will be actuarially equivalent to the SLA.

45.     Contrary to this standard methodology, the Plan does *not* use reasonable market interest and mortality rates to create the conversion factor.   Rather, the Plan baldly sets a conversion factor for each alternative benefit.   For example, the Plan applies a 0.90 conversion factor to the SLA to determine the base pension of retirees who select a 50% joint and survivor annuity; a 0.85 conversion factor for retirees who select a 75% joint and survivor annuity; and a 0.80 conversion factor for retirees who select a 100% joint & survivor annuity.

46.     Each conversion factor set by the Plan for an alternative benefit is lower than the conversion factor that would be generated using reasonable market interest rates and mortality tables.

47.     Because the Plan throughout the Class Period has used conversion factors that are lower than would be generated using reasonable market interest and mortality rates, the benefits paid to Plan participants and beneficiaries who receive payments under either a QJSA, QOSA or QPSA are *not* actuarially equivalent to what they would have received if they had selected a single-life annuity, in violation of ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B) and ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A).   Using the unreasonably low conversion factor instead of a conversion factor based on current mortality and interest rates reduces the monthly benefit by nearly 3% for a 50% joint and survivor annuity and by nearly 8% for a 100% joint and survivor annuity.

48.     Plaintiffs are each beneficiaries of the Plan who are receiving a QJSA. Because their benefits were calculated by using improperly low conversion factors, Plaintiffs are receiving

less each month than they would if the Plan used current, reasonable actuarial assumptions.  They, along with other class members, have been substantially damaged as a result of receiving benefits below an actuarially equivalent amount.

49.     As the Plan does not explain the method by which it sets the conversion factor, Plaintiffs and Class Members could not in the exercise of reasonable diligence have discovered that the Plan fails to provide alternative benefits that are actuarially equivalent to single-life annuities.

## CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the class (the "Class") defined as follows:

> All participants in and beneficiaries of the Plan who elected to receive an optional form of benefits other than a lump sum distribution of a participant's vested benefit.  Excluded from the Class are Defendants and any individuals who are subsequently to be determined to be fiduciaries of the Plan.

51.     The members of the Class are so numerous that joinder of all members is impractical.  Upon information and belief, the Class includes thousands of persons.

52.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs' claims and the claims of all Class members arise out of the same policies and practices as alleged herein, and all members of the Class are similarly affected by Defendants' wrongful conduct.

53.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

    A.    Whether the Plan's method for calculating optional benefits provide benefits that are actuarially equivalent to those that would be paid under a single-life annuity for the plan participant;

    B.    Whether the Plan's "conversion factors" are reasonable;

    C.    Whether the Plan should be reformed to comply with ERISA; and

    D.    Whether Plaintiffs and Class members should receive additional benefits.

54.    Plaintiffs will fairly and adequately represent the Class and have retained counsel experienced and competent in the prosecution of ERISA class actions.  Plaintiffs have no interests antagonistic to those of other members of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

55.    This action may be properly certified under either subsection of Rule 23(b)(1). Class action status is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.  Class action status is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

56.    In the alternative, certification under Rule 23(b)(2) is warranted because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

57.     In the alternative, certification under Rule 23(b)(3) is warranted because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### FIRST CLAIM FOR RELIEF
### Declaratory and Equitable Relief
### (ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

58.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

59.     The Plan improperly reduces annuity benefits for participants and beneficiaries who receive either a QJSA, a QOSA or a QPSA below the benefits that they would receive if those benefits were actuarially equivalent to a single-life annuity as ERISA requires.

60.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

61.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the Plan's established methodologies for calculating actuarial equivalence of QJSAs, QOSAs and QPSAs, including the joint and survivor annuity and "certain and life" options, violate ERISA because they do not provide an actuarially equivalent benefit.  By not providing an actuarially equivalent benefit, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

62.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

      (a)     re-calculation, correction and payment of benefits previously paid for QJSAs, QOSAs and QPSAs;

      (b)     an "accounting" of all prior benefits and payments;

      (c)     a surcharge;

      (d)     disgorgement of amounts wrongfully withheld;

      (e)     disgorgement of profits earned on amounts wrongfully withheld;

      (f)     a constructive trust;

      (g)     an equitable lien;

      (h)     an injunction against further violations; and

      (i)     other relief the Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**For Reformation of the Plan and Recovery of Benefits Under the Reformed Plan**
**(ERISA § 502(a)(1) and (3), 29 U.S.C. § 1132(a)(1) and (3))**

63.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

64.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

65.     The Plan improperly reduces annuity benefits for participants and beneficiaries who receive either a QJSA, a QOSA or a QPSA below the benefits that they would receive if those benefits were actuarially equivalent to a single-life annuity as ERISA requires. By not providing an actuarially equivalent benefit, Defendants have violated ERISA's anti-forfeiture clause, ERISA § 203(a), 29 U.S.C. § 1053(a).

66. Plaintiffs are entitled to reformation of the Plan to require Defendants to provide actuarially equivalent benefits.

67. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorizes a participant or beneficiary to bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

68. Plaintiffs are entitled to recover actuarially equivalent benefits, to enforce their right to the payment of past and future actuarially equivalent benefits, and to clarify their rights to future actuarially equivalent benefits, under the Plan following reformation.

**THIRD CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(ERISA §§ 1104 and 502(a)(3), 29 U.S.C. §§ 1104 and 1132(a)(3))**

69. Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

70. As the Plan's administrator, the PAC is a named fiduciary of the Plan.

71. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is

required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

72.    Defendants are fiduciaries for the Plan because they exercised discretionary authority or discretionary control respecting management of such plan or exercised any authority or control respecting management or disposition of Plan assets. The PAC had authority or control over the amount and payment of benefits paid through QJSAs, QOSAs and QPSAs which were paid from Plan assets.

73.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as the Plan is consistent with ERISA.

74.    The Plan is not consistent with ERISA because it uses unreasonable conversion factors that do not provide for actuarially equivalent options which resulted in participants and beneficiaries illegally forfeiting and losing vested benefits.

75.    In following the Plan in violation of ERISA, the PAC exercised its fiduciary duties and control over Plan assets in breach of its fiduciary duties.

76.    ERISA imposes on fiduciaries that appoint other fiduciaries the duty to monitor the actions of those appointed fiduciaries to ensure compliance with ERISA. In allowing the PAC to pay unreasonably low benefits in violation of ERISA, Pepsi and the EBB breached their fiduciary duties to supervise and monitor the PAC.

77.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to:  "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

78.     Pursuant to this provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief, determining that the Plan's established methodologies for calculating actuarial equivalence of QJSAs, QOSAs and QPSA violate ERISA because they do not provide an actuarially equivalent benefit.

79.     Plaintiffs further seek orders from the Court providing a full range of equitable relief, including but not limited to:

(a)     re-calculation, correction and payment of benefits previously paid for QJSAs, QOSAs and QPSAs;

(b)     an "accounting" of all prior benefits and payments;

(c)     a surcharge;

(d)     disgorgement of amounts wrongfully withheld;

(e)     disgorgement of profits earned on amounts wrongfully withheld;

(f)     a constructive trust;

(g)     an equitable lien;

(h)     an injunction against further violations; and

(i)     other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendants on all claims and requests that the Court award the following relief:

A.     Certifying this action as a class pursuant to FED. R. CIV. P. 23;

B.     Declaring that the Plan fails to properly calculate and pay QJSAs, QOSAs and QPSAs that are actuarially equivalent to single-life annuities, in violation of ERISA § 205(d)(1)(B), 29 U.S.C. § 1055(d)(1)(B) and ERISA § 205(d)(2)(A), 29 U.S.C. § 1055(d)(2)(A);

C.     Ordering Defendants to bring the Plan into compliance with ERISA, including, but not limited to, reforming the Plan to bring it into compliance with ERISA with respect to calculation of actuarially equivalent QJSAs, QOSAs and QPSAs;

D.     Ordering Defendants to correct and recalculate benefits that have been paid;

E.     Ordering Defendants to provide an "accounting" of all prior payments of benefits under the Plan to determine the proper amounts that should have been paid;

F.     Ordering Pepsi to pay all benefits improperly withheld, including under the theories of surcharge and disgorgement;

G.     Ordering Pepsi to disgorge any profits earned on amounts improperly withheld;

H.     Imposition of a constructive trust;

I.     Imposition of an equitable lien;

J.     Reformation of the Plan;

K.     Ordering Defendants to pay future benefits in accordance with ERISA's actuarial equivalence requirements;

L.     Ordering Defendants to pay future benefits in accordance with the terms of the Plan, as reformed;

M.     Awarding, declaring, or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper;

N.     Awarding attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

O.     Any other relief the Court determines is just and proper.

Dated: December 12, 2018

Respectfully submitted,

*/s/ Douglas P. Needham*
**IZARD, KINDALL & RAABE LLP**
Robert A. Izard (to be admitted *pro hac vice*)
Seth R. Klein (to be admitted *pro hac vice*)
Christopher M. Barrett
Douglas P. Needham
29 South Main Street, Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290
Email:  rizard@ikrlaw.com
Email:  sklein@ikrlaw.com
Email:  cbarrett@ikrlaw.com
Email:  dneedham@ikrlaw.com

Gregory Y. Porter (to be admitted *pro hac vice*)
Mark G. Boyko
**BAILEY & GLASSER LLP**
1054 31st Street, NW, Suite 230
Washington, DC 20007
(202) 463-2101
(202) 463-2103 fax
gporter@baileyglasser.com
mboyko@baileyglasser.com

***Counsel for Plaintiffs***