**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X:

WILLIAM DuBUSKE, MICHAEL   :
DUCHAINE, and GARY MAYNARD, on   :
behalf of themselves and all others similarly   :   Case No. 7:18-cv-11618-VB
situated,   :
  :   Judge Vincent L. Bricceti
          Plaintiffs,   :
  :
v.   :
  :
PEPSICO, INC., the EMPLOYEE BENEFITS :
BOARD, the PEPSICO ADMINISTRATION :
COMMITTEE, and JOHN/JANE DOES 1-50, :
  :
          Defendants.   :
  X

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

<br>

Jeremy P. Blumenfeld
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5258
jeremy.blumenfeld@morganlewis.com

Stephanie R. Reiss
(*pro hac vice forthcoming*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
(412) 560-3378
stephanie.reiss@morganlewis.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ............................................................................................ 1

II.  FACTUAL ALLEGATIONS ........................................................................... 3

III.  LEGAL STANDARD ...................................................................................... 4

IV.  ARGUMENT ................................................................................................... 5

    A.  There Is No Private Right of Action Under ERISA to Enforce Regulations Issued Under the Internal Revenue Code ............................................ 5

        1.  There Is No Private Right of Action to Enforce Internal Revenue Code Regulations. ..................................................... 5

        2.  ERISA's Enforcement Provisions Do Not Authorize the Claims Advanced by Plaintiffs Here. .................................. 7

    B.  ERISA's Statutory Provisions Do Not Limit the Actuarial Equivalence Factors That May Be Used When Calculating Annuities. ................... 9

        1.  29 U.S.C.  § 1053(a) Does Not Require That Plans Only Use "Reasonable" Actuarial Factors for Calculating Joint and Survivor Annuities. ....................................................... 10

        2.  29 U.S.C. § 1055 Does Not Require That Plans Only Use "Reasonable" Actuarial Factors for Calculating Joint and Survivor Annuities. ....................................................... 11

        3.  Congress Could Have Required That Plans Only Use "Reasonable" Actuarial Factors for Calculating Joint and Survivor Annuities, But It Did Not Do So. .............................. 13

    C.  Plaintiffs Allege a Less Than Three Percent Variation in Their Joint and Survivor Annuity, Which Is Reasonable as a Matter of Law Under the Regulations Cited by Plaintiffs. .......................................... 16

    D.  Plaintiffs' Breach of Fiduciary Duty Claim Fails as a Matter of Law. ............ 18

V.  CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*
451 U.S. 504 (1981)..........................................................................................10, 11, 13, 15

*Alexander v. Sandoval,*
532 U.S. 275 (2001)...............................................................................................................9

*Anderson v. Sotheby's Inc. Severance Plan,*
No. 04-8180, 2005 WL 1309056 (S.D.N.Y. May 31, 2005) ...............................................7, 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).............................................................................................................4, 5

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...............................................................................................................4

*Bilello v. JPMorgan Chase Ret. Plan,*
No. 07-7379, 2009 WL 1108576 (S.D.N.Y. Apr. 24, 2009) .............................................6, 13

*Bohnet v. Valley Stream Union Free Sch. Dist. 13,*
594 F. App'x 53 (2d Cir. 2015) .............................................................................................4

*Burgio & Campofelice, Inc. v. NY State Dep't of Labor,*
107 F.3d 1000 (2d Cir. 1997)...............................................................................................15

*Chendes v. Xerox HR Sols., LLC,*
No. 16-13980, 2017 WL 4698970 (E.D. Mich. Oct. 19, 2017)..........................................7, 8

*Costantino v. TRW, Inc.,*
773 F. Supp. 34 (N.D. Ohio 1991), *aff'd in part*, 13 F.3d 969 (6th Cir. 1994) ......................12

*Cowan v. Keystone Emps. Profit Sharing Fund,*
586 F.2d 888 (1st Cir. 1978).................................................................................................5

*Great-W. Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002)..............................................................................................................13

*Gurasich v. IBM Ret. Plan,*
No. 14-02911, 2016 WL 362399 (N.D. Cal. Jan. 29, 2016)..................................................8

*Hirt v. Equitable Ret. Plan for Emps., Managers, & Agents,*
533 F.3d 102 (2d Cir. 2008).................................................................................................15

*Hughes Aircraft Co. v. Jacobson,*
   525 U.S. 432 (1999)...........................................................................................8

*Kollman v. Hewitt Assocs., LLC,*
   487 F.3d 139 (3d Cir. 2007)...........................................................................7, 8

*Kucana v. Holder,*
   558 U.S. 233 (2010)....................................................................................2, 7, 8

*Mass. Mut. Life Ins. Co. v. Russell,*
   473 U.S. 134 (1985) .......................................................................................13

*Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.,*
   631 F.3d 57 (2d Cir. 2011)................................................................................4

*Mertens v. Hewitt Assocs.,*
   508 U.S. 248 (1993)..................................................................................3, 8, 13

*Morrone v. Pension Fund of Local No. One, IATSE,*
   867 F.3d 326 (2d Cir. 2017).............................................................................12

*Nolan v. Meyer,*
   520 F.2d 1276 (2d Cir. 1975)........................................................................2, 5

*Reklau v. Merchs. Nat'l Corp.,*
   808 F.2d 628 (7th Cir. 1986) ............................................................................6

*Rush Prudential HMO, Inc. v. Moran,*
   536 U.S. 355 (2002)........................................................................................16

*Russello v. United States,*
   464 U.S. 16 (1983)......................................................................................2, 15

*PBGC ex rel St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc.,*
   712 F.3d 705 (2d Cir. 2013)...............................................................................4

*Stamper v. Total Petroleum, Inc. Ret. Plan For Hourly Rated Emps. With The*
   *Bargaining Unit Represented By Local 642 Of The IUOE,*
   188 F.3d 1233 (10th Cir. 1999) ......................................................................2, 7

*Stone & Webster Eng'g Corp. v. Ilsley,*
   690 F.2d 323 (2d Cir. 1982), *aff'd sub nom. Arcudi v. Stone & Webster Eng'g*
   *Corp.,* 463 U.S. 1220 (1983)...................................................................... 15-16

*Suozzo v. Bergreen,*
   No. 00-9649, 2003 WL 256788 (S.D.N.Y. Feb. 5, 2003)...................................6, 18

*United States v. Peterson*,
    394 F.3d 98 (2d Cir. 2005) ........................................................................15

*Vinson v. Elkins v. C.I.R.*,
    7 F.3d 1235 (5th Cir. 1993) ......................................................................17

*Wachtell, Lipton, Rosen & Katz v. C.I.R.*,
    26 F.3d 291 (2d Cir. 1994).........................................................................16

*Wiesner v. Romo Paper Prod. Corp. Emp. Ret. Plan*,
    514 F. Supp. 289 (E.D.N.Y. 1981) ............................................................6

*In re Witwer*,
    148 B.R. 930 (Bankr. C.D. Cal. 1992),
    *aff'd*, 163 B.R. 614 (9th Cir. BAP 1994) ..................................................6

**Statutes**

2 U.S.C. § 476(e)(1) ........................................................................................9

8 U.S.C. §§ 1103(a)(4), (6) and (10) ..............................................................9

12 U.S.C. § 1426(a)(4)(A) ..............................................................................9

17 U.S.C. § 701(e) ...........................................................................................9

26 U.S.C. § 401 *et seq.* ............................................................................ *passim*

29 U.S.C. § 1002(23) .....................................................................................12

29 U.S.C. § 1002(24) .......................................................................................4

29 U.S.C. § 1053 *et seq.* ........................................................................... *passim*

29 U.S.C. § 1054(b)(1)(H)(i) .........................................................................15

29 U.S.C. § 1054(g) .......................................................................................12

29 U.S.C. § 1055 *et seq.* ........................................................................... *passim*

29 U.S.C. § 1085a ...........................................................................................14

29 U.S.C. § 1132(a)(1)(B) ...............................................................................1

29 U.S.C. § 1132(a)(3) ...........................................................................1, 2, 7, 8

29 U.S.C. § 1132(c)(1) ....................................................................................8

29 U.S.C. § 1132(c)(5) ....................................................................................9

29 U.S.C. § 1393(a) ........................................................................................................14

Retirement Equity Act of 1984, Pub. L. No. 98–397, 98 Stat. 1426 (Aug. 23, 1984) ..................................................................................................................12

**Other Authorities**

26 C.F.R. § 1.401(a)(4) ...................................................................................................6

26 C.F.R. § 1.401(a)-11 ...................................................................................................5

26 C.F.R. § 1.401(a)-11(b)(2) ....................................................................................1, 5

26 C.F.R. § 1.417(a)(3)-1 ............................................................................................3, 5

26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C) .....................................................................3, 17

26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B) ...........................................................................1

26 C.F.R. § 1.417(a)(3)-1(e), Example 2(ii) ................................................................18

29 C.F.R. § 2550.408b–2(c) ...........................................................................................8

42 Fed. Reg. 1463 (Jan. 1, 1977) ...................................................................................5

40 Fed. Reg. 45,810 (Oct. 3, 1975) ................................................................................5

68 Fed. Reg. 70,141-01 (Dec. 17, 2003) ......................................................................18

Federal Rule of Civil Procedure 12(b)(6) ...................................................................4, 7

Notice of Proposed Rulemaking, Proposed Regulations, NPRM REG-124667-02 (Oct. 7, 2002) ...........................................................................................................18

## I.    INTRODUCTION

This is an action under the Employee Retirement Income Security Act ("ERISA"). Plaintiffs William DuBuske, Michael Duchaine and Gary Maynard ("Plaintiffs") allege that they are participants in the PepsiCo Salaried Employees Retirement Plan ("the Plan") who elected and are receiving 50% joint and survivor annuity pension benefits from the Plan, also known as the Plan's Qualified Joint and Survivor Annuity ("QJSA").  Compl. ¶¶ 39, 48.  In their Complaint, Plaintiffs do not allege that they are entitled to additional benefits under the terms of the Plan, or that their benefits were calculated incorrectly under the Plan terms.  Instead, Plaintiffs allege that the actuarial factors in the Plan for calculating their QJSAs are not "reasonable," as they claim is required by Treasury Department regulations.  Compl. ¶¶ 30, 31 (quoting 26 C.F.R. § 1.401(a)-11(b)(2) and 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B)).  Specifically, Plaintiffs claim that their benefits are "nearly 3%" lower than they would be using the actuarial factors that Congress explicitly requires, and the Plan uses, for calculating *lump sum* benefits, although they admit that ERISA does not require that those factors – or any particular actuarial factors –be used for annuity pensions.  Compl. ¶¶ 28, 29, 47.  Plaintiffs seek equitable relief under 29 U.S.C. § 1132(a)(3) – in the form of declaratory relief, reformation of the Plan, and any other equitable relief available for the alleged breach of fiduciary duty in using the Plan-specified actuarial factors.[1]

Even accepting Plaintiffs' well-pled factual allegations as true, Plaintiffs' claims fail as a matter of law.

---

[1]      Although Plaintiffs state in their Second Claim for Relief that they are also seeking benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), this count is specifically premised on the Court having first determined that the Plan must be reformed under 29 U.S.C. § 1132(a)(3) to change the applicable actuarial conversion factor.  *See* Compl. ¶¶ 63-68.

- First, there is no private right of action under ERISA to enforce the Internal Revenue Code ("Code") regulation upon which Plaintiffs rely. The applicable section of the Code does not create substantive rights for which a federal remedy can be implied. *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir. 1975). And the relevant ERISA enforcement provision – 29 U.S.C. § 1132(a)(3) – only allows participants to seek to enjoin or redress a violation of "any provision *of this subchapter*," which means statutory provisions of Subchapter I of ERISA. It does not authorize enforcement of Code provisions or *any* regulations, including regulations under ERISA or the Code. *See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 237 (2010) ("the key words 'specified under this subchapter' refer to statutory, but not to regulatory, specifications") (regarding a different statute); *Stamper v. Total Petroleum, Inc. Ret. Plan For Hourly Rated Emps. With The Bargaining Unit Represented By Local 642 Of The IUOE*, 188 F.3d 1233, 1239 (10th Cir. 1999) ("[T]he provisions of 26 U.S.C. § 401(a) *and the regulations promulgated under them* cannot form the basis of an ERISA action.") (emphasis added).

- Second, there is no basis in ERISA's statutory provisions for requiring that actuarial factors for calculating joint and survivor annuities be "reasonable," or imposing liability when those factors are not reasonable. ERISA's nonforfeitability provision – 29 U.S.C. § 1053, cited in each of Plaintiffs' claims for relief – does not require that actuarial factors be reasonable. And the other statute cited in the Complaint, 29 U.S.C. § 1055, likewise does not impose such a requirement for joint and survivor annuities. Although ERISA requires that specific actuarial factors be used for lump sum calculations, and further requires that actuarial factors be "reasonable" for plan funding and withdrawal liability purposes, Congress did not impose any "reasonableness" requirement on the actuarial factors used when calculating QJSAs. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.")
(internal quotations and citation omitted).  That deliberate choice by Congress – in a statute as
"comprehensive and reticulated" as ERISA – is the end of the inquiry.  *Mertens v. Hewitt
Assocs.*, 508 U.S. 248, 252 (1993).

- Third, Plaintiffs have pled themselves out of court even under the legal theory
advanced in the Complaint.  Plaintiffs allege a less-than-three-percent difference between the
benefits calculated using the actuarial factors in the Plan and the actuarial factors they argue are
acceptable.  Compl. ¶ 47.  The Treasury regulations that Plaintiffs cite in the Complaint (26
C.F.R. § 1.417(a)(3)-1, *see* Compl. ¶ 31) make clear, however, that a benefit difference of five
percent or less is not only reasonable, but is deemed "approximately equal in value" as a matter
of law.  26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C) ("The relative value of all optional forms of
benefit that have an actuarial present value that is at least 95% of the actuarial present value of
the QJSA and no greater than 105% of the actuarial present value of the QJSA is permitted to be
described by stating that those optional forms of benefit are approximately equal in value to the
QJSA . . . .").

For these reasons, and those explained further below, the Complaint should be dismissed
in its entirety.

## II.      FACTUAL ALLEGATIONS[2]

Plaintiffs allege that they are participants in the Plan who elected, and are receiving, a
50% joint and survivor annuity.  Compl. ¶ 39 (defining the QJSA under the Plan as the 50% joint
and survivor annuity); ¶ 48 (Plaintiffs elected and are receiving the QJSA).

---

[2]      Defendants accept, for purposes of this motion only, the well-pled factual allegations in
the Complaint.

Plaintiffs allege that applying the Plan's actuarial factors to the 50% joint and survivor benefit "reduces the monthly benefit by *nearly 3%*" as compared to the actuarial factors Congress requires for lump sum calculations and that Plaintiffs submit as reasonable.  Compl. ¶ 47 (emphasis added).  *See also* 29 U.S.C. § 1055(g) (defining the applicable mortality table and applicable interest rate for purposes of lump sum distributions).

Many of ERISA's provisions only apply with respect to the benefit at "normal retirement age."  29 U.S.C. § 1002(24).  Plaintiffs allege that the Plan's normal retirement age is sixty-five.  Compl. ¶ 38.   They do not, however, allege that they elected their benefits at the Plan's normal retirement age, nor do they allege any comparison or shortfall (actuarial or otherwise) between the benefits they are receiving and the normal retirement benefit to which they would have been entitled at normal retirement age.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to state a claim of relief that is "plausible on its face."  *Bohnet v. Valley Stream Union Free Sch. Dist. 13*, 594 F. App'x 53, 54 (2d Cir. 2015) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also PBGC ex rel St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).  While the Court must accept "well-pleaded factual allegations" as true, it should

not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action . . . ." *Iqbal*, 556 U.S. at 678-79.  Where, as here, Plaintiffs are not entitled to relief even if their well-pled facts are accepted as true, their claims fail as a matter of law and should be dismissed.

## IV.   ARGUMENT

### A.   There Is No Private Right of Action Under ERISA to Enforce Regulations Issued Under the Internal Revenue Code.

Plaintiffs allege that the actuarial factors used to calculate their 50% joint and survivor annuities under the Plan are not "reasonable," as required by 26 C.F.R. § 1.401(a)-11(b)(2).[3]  *See* Compl. ¶ 30 (citing and quoting regulation).  Plaintiffs have no cognizable claim because ERISA does not provide a private right of action to enforce this Code regulation.

#### 1.   There Is No Private Right of Action to Enforce Internal Revenue Code Regulations.

First, 26 C.F.R. § 1.401(a)-11 is a Treasury regulation promulgated under the authority of 26 U.S.C. § 401(a).  *See* 40 Fed. Reg. 45,810 (Oct. 3, 1975); 42 Fed. Reg. 1463 (Jan. 1, 1977).  Likewise, 26 C.F.R. § 1.417(a)(3)-1, by its terms, sets forth "the survivor annuity requirements *of section 401(a)(11)*" of the Internal Revenue Code, i.e., 26 U.S.C. § 401(a)(11).  *See* 26 C.F.R. § 1.417(a)(3)-1 ("A plan meets the survivor annuity requirements *of section 401(a)(11)* only if the plan . . . .") (emphasis added).  It is settled that no private right of action exists to enforce 26 U.S.C. § 401 or its implementing regulations.  *See, e.g.*, *Nolan*, 520 F.2d at 1280 (affirming dismissal of claims because 26 U.S.C. § 401 *et seq.* does not define a substantive right for which a federal remedy could be fairly implied); *Cowan v. Keystone Emps. Profit Sharing Fund*, 586

---

[3]   That regulation states in relevant part: "Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors, for each participant or for all participants or reasonable groupings of participants, if such determination does not result in discrimination in favor of employees who are officers, shareholders, or highly compensated."  *Id.*

F.2d 888, 890 n.3 (1st Cir. 1978) (stating there was no private right of action under Code section 401 because it does not create any substantive rights that a beneficiary could enforce); *Reklau v. Merchs. Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) (same); *Bilello v. JPMorgan Chase Ret. Plan*, No. 07-7379, 2009 WL 1108576, at *2-4 (S.D.N.Y. Apr. 24, 2009) (granting motion to dismiss claim to enforce a requirement in Code section 401(a)(25) because "[w]hile ERISA's civil enforcement provision permits suit for a violation of ERISA, 29 U.S.C. § 1132, it does not permit participants to bring lawsuits alleging other violations of other statutory provisions that an ERISA plan might commit") (footnote omitted); *Suozzo v. Bergreen*, No. 00-9649, 2003 WL 256788, at *1–2 (S.D.N.Y. Feb. 5, 2003) (granting motion to dismiss cause of action alleging violation of 26 U.S.C. § 401(a)(4) and 26 C.F.R. § 1.401(a)(4) on the basis that "there is no private right of action for an alleged violation of Section 401, and thus the plaintiff has no claim based on the alleged failure of the Plan to comply with Section 401"); *Wiesner v. Romo Paper Prod. Corp. Emp. Ret. Plan*, 514 F. Supp. 289, 291 n.2 (E.D.N.Y. 1981) ("There is no merit in plaintiff's repeated arguments that federal jurisdiction is available because the defendants' conduct assertedly entails violations of Internal Revenue Code provisions governing pension plans. The sections relied on, 26 U.S.C. ss 401, 404 and 503, do not create a substantive right that a beneficiary, participant or fiduciary could enforce."); *In re Witwer*, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992) (stating that "I.R.C. 401(a) does not appear to create any substantive rights that a beneficiary or participant . . . can enforce"), *aff'd*, 163 B.R. 614 (9th Cir. B.A.P. 1994).  The Complaint should therefore be dismissed.

2.     **ERISA's Enforcement Provisions Do Not Authorize the Claims
Advanced by Plaintiffs Here.**

Second, ERISA's enforcement provisions do not authorize the claims advanced by

Plaintiffs here.  The enforcement provision that Plaintiffs use to bring their claims – 29 U.S.C. §

1132(a)(3) – authorizes a civil action:

> to enjoin any act or practice which violates any provision *of this
> subchapter* or the terms of the plan, or  . . . to obtain other appropriate
> equitable relief (i) to redress such violations or (ii) to enforce any
> provisions *of this subchapter* or the terms of the plan[.]

*Id.* (emphasis added).  By its terms, this provision only authorizes actions to enforce the

provisions of *"this subchapter,"* meaning *Subchapter I of ERISA.*  It does not authorize actions

to enforce the Code.  And it does not authorize actions to enforce regulations – regardless of

whether those regulations were issued under ERISA or the Code – because such regulations are

not "provisions of" Subchapter I of ERISA.  *See, e.g.*, *Kollman v. Hewitt Assocs., LLC*, 487 F.3d

139, 147 (3d Cir. 2007) (explaining that "the words 'this subchapter' in § 502(c) [29 U.S.C. §

1132(c)] refer only to violations of statutorily imposed obligations, and that the term does not

embrace violations of regulations promulgated pursuant to the statute") (internal citation

omitted); *Kucana*, 558 U.S. at 237 (when interpreting federal immigration statute, holding "that

the key words 'specified under this subchapter' refer to statutory, but not to regulatory,

specifications"); *Stamper*, 188 F.3d at 1239 ("[T]he provisions of 26 U.S.C. § 401(a) *and the

regulations promulgated under them* cannot form the basis of an ERISA action.") (emphasis

added); *Chendes v. Xerox HR Sols., LLC*, No. 16-13980, 2017 WL 4698970, at *11-12 (E.D.

Mich. Oct. 19, 2017) (granting Rule 12(b)(6) motion on claims based on failure to comply with

regulation issued pursuant to ERISA, because 29 U.S.C. § 1132(a)(3) only provides relief from

"any act or practice which violates any provision of this subchapter," and the regulation is

necessarily not part of the subchapter) (internal quotations and citation omitted); *Anderson v.*

7

*Sotheby's Inc. Severance Plan*, No. 04-8180, 2005 WL 1309056, at *3-4 (S.D.N.Y. May 31, 2005) (dismissing claim for violation of regulations, and agreeing with other courts that have held that violation of "this subchapter" in Section 502(c) "'refers only to violations of statutorily imposed obligations'" and not  implementing regulations) (internal citation omitted); *Gurasich v. IBM Ret. Plan*, No. 14-02911, 2016 WL 362399, at *13 (N.D. Cal. Jan. 29, 2016) (noting that the First, Third, Sixth, Seventh and Eighth Circuits have all held that "the plain language of section 1132(c) provides penalties only for violations of 'this subchapter,' which does not include regulations implementing section 1133").[4]

As the *Chendes* court explained:

> Plaintiffs cite no authority for the proposition that this regulation [29 C.F.R. § 2550.408b–2(c)] provides a private right of action, and the court has found none. . . .  In the court's view, Congress's use of the phrase "this subchapter" means nothing other than that; this provision is limited to the actual statutory language and excludes ERISA regulations like § 2550.408b-2(c) from the scope of civil enforcement through a private cause of action.

2017 WL 4698970, at *12; *see also Kucana*, 558 U.S. at 237.

The decisions above are compelled not only by the text of the statute, but also by Supreme Court precedent:  ERISA's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Mertens*, 508 U.S. at 254 (internal quotations and citations omitted); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 447 (1999) (ERISA's

---

[4]    In *Kollman*, *Anderson*, and *Gurasich*, the courts were interpreting the phrase "this subchapter" in 29 U.S.C. § 1132(c)(1), not 29 U.S.C. § 1132(a)(3).  The relevant language is the same in both sections, and must be given the same meaning.  *See Mertens*, 508 U.S. at 260 (noting specifically with respect to 29 U.S.C. § 1132(a)(3) that "language used in one portion of a statute should be deemed to have the same meaning as the same language used elsewhere in the statute") (parentheticals omitted).

enforcement provisions "should not be supplemented by extratextual remedies") (citations omitted).  In fact, the Supreme Court has made clear that "private rights of action to enforce federal law must be created by Congress," not by federal agencies, and "it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001).

Congress knew how to include regulations within ERISA's enforcement provisions when it wanted to do so.  For example, in 29 U.S.C. § 1132(c)(5), Congress authorized claims for violating "regulations prescribed pursuant to section 1021(g) of this title."  Thus, regulations "prescribed pursuant to" that statutory provision of ERISA are enforceable under ERISA's enforcement provisions because Congress specifically said so, but other regulations are not.[5]

In short, neither the Code nor ERISA authorizes a private right of action to enforce the regulations that form the basis of Plaintiffs' claims.  Their claims therefore fail as a matter of law.

### B.     ERISA's Statutory Provisions Do Not Limit the Actuarial Equivalence Factors That May Be Used When Calculating Annuities.

Although Plaintiffs rely in their Complaint primarily on Treasury Regulations, they also cite two statutory provisions of ERISA, 29 U.S.C. § 1053 and § 1055, to support their claims.  Neither of these statutory sections, however, applies to the facts they have pled or imposes limitations on the actuarial factors to be used when calculating joint and survivor annuities.

---

[5]     Similarly, in other statutes where Congress intended to provide for a right of action to enforce regulations, it has explicitly so stated.  *See, e.g.*, 8 U.S.C. §§ 1103(a)(4), (6) and (10) ("powers, privileges, or duties conferred or imposed by this chapter *or regulations issued thereunder*"); 2 U.S.C. § 476(e)(1) ("the provisions of subchapter 1 of chapter 57 and section 5731 of Title 5, *and regulations promulgated thereunder*"); 12 U.S.C. § 1426(a)(4)(A) ("this chapter *and the regulations issued hereunder*"); 17 U.S.C. § 701(e) ("section 706(b) *and the regulations issued thereunder*") (emphases added).

> **1.      29 U.S.C. § 1053(a) Does Not Require That Plans Only Use "Reasonable" Actuarial Factors for Calculating Joint and Survivor Annuities.**

Plaintiffs rely on 29 U.S.C. § 1053(a), which imposes certain vesting schedules based on years of service and requires that "[e]ach pension plan shall provide that an employee's right to his *normal retirement benefit* is nonforfeitable upon the attainment of *normal retirement age*." 29 U.S.C. § 1053(a) (emphasis added); *see also* Compl. ¶¶ 1, 32, 61, 65 (citing or summarizing statute). This statutory provision neither applies to the facts as alleged by Plaintiffs nor requires the Plan to provide anything other than the vested benefit at normal retirement age as calculated *under the terms of the Plan*.

First, 29 U.S.C. § 1053 does not even mention joint and survivor annuities or qualified joint and survivor annuities. *See* 29 U.S.C. § 1053. Second, Plaintiffs allege that the Plan's normal retirement age is sixty-five. Compl. ¶ 38. They do not, however, allege that they elected their retirement benefits to begin at age sixty-five, or what age they did commence their benefits. Nor do they allege any comparison or any shortfall between the joint and survivor benefits they are receiving and their normal retirement benefits payable at age sixty-five. In short, Plaintiffs do not allege that their "normal retirement benefit[s]" were forfeited upon the attainment of "normal retirement age," in violation of 29 U.S.C. § 1053(a). This statutory section is therefore inapposite.

Third, the Supreme Court has squarely rejected attempts to impose requirements on the method for calculating plan benefits based on 29 U.S.C. § 1053(a). The Supreme Court explained in *Alessi v. Raybestos-Manhattan, Inc.* 451 U.S. 504, 513 (1981), that "the statutory definition of 'nonforfeitable' assures that an employee's claim to the protected benefit is legally enforceable, but it does not guarantee a particular amount *or a method for calculating the benefit*." (emphasis added). Thus, the Supreme Court held:

> [R]etirees' argument overlooks a threshold issue:  what defines the content
> of the benefit that, once vested, cannot be forfeited?  ERISA leaves this
> question largely to the private parties creating the plan.  That the private
> parties, not the Government, control the level of benefits is clear from the
> statutory language defining nonforfeitable rights as well as from other
> portions of ERISA.

*Id.* at 511.

Here, the Plan defines the benefit each Plaintiff earned, including the actuarial factors used to calculate the QJSA.  Each Plaintiff has received that benefit, in accordance with the Plan terms.  Plaintiffs are entitled to nothing more.

### 2.   29 U.S.C. § 1055 Does Not Require That Plans Only Use "Reasonable" Actuarial Factors for Calculating Joint and Survivor Annuities.

Plaintiffs' reliance on 29 U.S.C. § 1055 is similarly misplaced.  In their Complaint (¶¶ 24-25), Plaintiffs cite 29 U.S.C. § 1055(d)(1), which defines the term "qualified joint and survivor annuity."  Congress did not, however, require plans to use any specific actuarial factors when calculating the QJSA.  Instead, Congress left the actuarial factors to the discretion of the plan sponsor in defining the benefits to which participants are entitled.  *See Alessi*, 451 U.S. at 513.  *See also infra* pp. 14-15.  And Plaintiffs do not allege that they are receiving less than that to which they are entitled under the Plan terms, using the actuarial factors set forth in the Plan. Nothing more is required.

Moreover, 29 U.S.C. § 1055(d) does not create any substantive, enforceable rights. Instead, it is just a definition of the QJSA that applies "for purposes of this section," and in turn is used in the substantive provision requiring payment of accrued benefits – 29 U.S.C. § 1055(a). That substantive provision also does not provide a viable cause of action for Plaintiffs because it merely requires that for certain participants the "*accrued benefit* payable to such participant[s] shall be provided in the form of a qualified joint and survivor annuity."  29 U.S.C. § 1055(a)

(emphasis added).  The "accrued benefit," in turn, is the pension benefit "expressed in the form of an annual benefit *commencing at normal retirement age*."  29 U.S.C. § 1002(23) (defining "accrued benefit") (emphasis added); *see also Morrone v. Pension Fund of Local No. One, IATSE*, 867 F.3d 326, 335 (2d Cir. 2017) (explaining that "ERISA's benefit accrual requirements provide that an 'accrued benefit under a defined benefit plan must be valued in terms of the annuity that it will yield at normal retirement age'") (internal citation omitted); *Costantino v. TRW, Inc.*, 773 F. Supp. 34, 41 (N.D. Ohio 1991) ("'[A]ccrued benefit' can best be defined as the actuarial equivalent of the annual benefit commencing at normal retirement age.") (footnote omitted), *aff'd in part*, 13 F.3d 969 (6th Cir. 1994).

Once again, Plaintiffs here state that the Plan's normal retirement age is sixty-five, Compl. ¶ 38, but they do not allege that they commenced their pension benefits at age sixty-five. Nor do they allege any comparison or any shortfall (actuarial or otherwise) between the joint and survivor benefits they are receiving and their accrued benefits payable at age sixty-five.[6]  As such, they have not alleged facts sufficient to suggest they are not receiving their accrued benefits and thus cannot state a claim under 29 U.S.C. § 1055.

---

[6]     Congress knew how to include early retirement benefits within the definition of "accrued benefit" when it intended to do so.  Congress amended ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), in 1984 to provide that amendments that reduce early retirement benefits "shall be treated as reducing accrued benefits."  29 U.S.C. § 1054(g)(2); Retirement Equity Act of 1984, Pub. L. No. 98–397, 98 Stat. 1426 (Aug. 23, 1984). Congress specifically limited that provision to apply only "[f]or purposes of paragraph (1)" of 29 U.S.C. § 1054(g).  Congress did not include similar language in 29 U.S.C. §§ 1053 or 1055.

3.     **Congress Could Have Required That Plans Only Use "Reasonable"**
**Actuarial Factors for Calculating Joint and Survivor Annuities, But It**
**Did Not Do So.**

"ERISA is a comprehensive and reticulated statute, which Congress adopted after careful study of private pension plans." *Alessi*, 451 U.S. at 510 (internal quotations and citations omitted). Recognizing this, the Supreme Court has held that courts cannot and should not interpret ERISA to impose requirements that are not contained in its text. *See id.* (rejecting plaintiffs' effort to impose a requirement that benefits be calculated in a certain way, because the statute does not require such); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (explaining that the Supreme Court has been "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the [ERISA] statute by extending remedies not specifically authorized by its text" (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985))); *Mertens*, 508 U.S. at 254 (discussing same); *see also Bilello*, 2009 WL 1108576, at *2-4 (granting motion to dismiss claim for failing to specify a projection method that resulted in the accrual of benefits that was "definitely determinable" because such requirement was only found in Code section 401(a)(25) and "is not expressly incorporated into ERISA, [so] it should not be read into that statute").

At bottom, Plaintiffs' theory runs afoul of these fundamental principles. Plaintiffs want to read into the text of 29 U.S.C. § 1053 and 29 U.S.C. § 1055 a "reasonableness" requirement that does not exist. To be sure, Congress could have required that plans use "reasonable" actuarial factors for calculating joint and survivor annuities if that is what Congress intended. It did not. And Congress knew how to do so when it was intended. In fact, Congress does require that actuarial assumptions for certain purposes be "reasonable" – just not for the purposes about which Plaintiffs complain here.

Specifically, 29 U.S.C. § 1085a requires that for plan-funding purposes, plans use "actuarial assumptions and methods . . . *each of which is reasonable* (taking into account the experience of the plan and reasonable expectations) . . . ." 29 U.S.C. § 1085a(c)(3)(A) (emphasis added). By its terms, however, that requirement only applies "[f]or purposes of this section" of the statute, *i.e.*, the plan-funding requirements that are described in 29 U.S.C. § 1085a. 29 U.S.C. § 1085a(c)(3). Moreover, for purposes of determining withdrawal liability, Congress applies a different reasonableness requirement – requiring that plans use "actuarial assumptions and methods *which, in the aggregate, are reasonable* (taking into account the experience of the plan and reasonable expectations) . . . ." 29 U.S.C. § 1393(a)(1) (emphasis added).[7] Thus, Congress explicitly stated that actuarial factors needed to be "reasonable" when that is what it intended. And Congress also distinguished between circumstances (plan funding) where it intended to require plans to use actuarial factors "each of which is reasonable," and circumstances (withdrawal liability) where it merely required plans to use actuarial factors that are reasonable "in the aggregate." Congress even amended ERISA twice (in 1994 and again in 2006) to require plans to use certain specific actuarial factors – the "applicable mortality table" and "applicable interest rate" – but *only* for purposes of calculating *lump sum benefits*, not annuities. 29 U.S.C. § 1055(g)(3)(B); *see also* Compl. ¶¶ 28, 29.

Congress did none of these things for joint and survivor annuities. As Plaintiffs acknowledge in the Complaint, Congress does not require plans to calculate joint and survivor annuities on the basis of the "applicable interest rate" or "applicable mortality table" that explicitly apply to lump sum calculations. Compl. ¶ 29. And despite amending the statute

---

[7]     The statute makes clear that this provision only applies to the calculation of withdrawal liability. *See* 29 U.S.C. § 1393(a) ("Withdrawal liability . . . shall be determined by each plan on the basis of . . . .")

numerous times, Congress has never required that joint and survivor annuities be determined using "reasonable" actuarial assumptions – either individually or in the aggregate – as Congress did for funding and withdrawal liability purposes.  That Congress specifically used the word "reasonable" in certain parts of the statute – but did not here – is not just an oversight.  Rather, as the Supreme Court explained in *Russello*:

> Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.

*Russello*, 464 U.S. at 23 (internal quotations and citation omitted).  That is all the more true here, with a statute that is as "carefully crafted and reticulated" as ERISA.  *Alessi*, 451 U.S. at 510; *see also Hirt v. Equitable Ret. Plan for Emps., Managers, & Agents*, 533 F.3d 102, 108 (2d Cir. 2008) (discussing the fact that Congress did not use the term "accrued benefit" when it drafted 29 U.S.C. § 1054(b)(1)(H)(i), and therefore did not mean to incorporate the concept of retirement age annuity into that section because "[w]hen Congress uses particular language in one section of a statute and different language in another, we presume its word choice was intentional") (citing *United States v. Peterson*, 394 F.3d 98, 107 (2d Cir. 2005)).

Indeed, imposing a "reasonableness" requirement – absent specific statutory requirements established by Congress – is anathema to ERISA, which leaves to "private parties, not the Government, [to] control the level of benefits."  *Alessi*, 451 U.S. at 511; *see also Burgio & Campofelice, Inc. v. NY State Dep't of Labor*, 107 F.3d 1000, 1007 (2d Cir. 1997) (stating that "ERISA does not mandate that employers provide any particular benefits" and "[u]nder ERISA, 'private parties, not the Government, control the level of benefits'" (quoting *Alessi*); *Stone & Webster Eng'g Corp. v. Ilsley*, 690 F.2d 323, 328 (2d Cir. 1982) ("[W]hat defines an employee benefit which once vested cannot, under ERISA, be forfeited. The answer is found, the Court

tells us, in the arrangements made by the private parties creating the employee benefit plan."),

*aff'd sub nom. Arcudi v. Stone & Webster Eng'g Corp.*, 463 U.S. 1220 (1983).  Imposing such a

non-statutory requirement would also undermine ERISA's policy of "inducing employers to

offer benefits by assuring a predictable set of liabilities, under uniform standards of primary

conduct . . . ."  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002).

     The Plan defines actuarial equivalence factors that apply to joint and survivor annuity

benefits.  Compl. ¶¶ 9, 45.  Plaintiffs do not allege that they have not received the benefits to

which they are entitled under the actual Plan terms, using the Plan's actuarial factors.  Plaintiffs'

attempt to graft a "reasonableness" requirement onto the statute, where none exists, fails as a

matter of law.

     **C.**    **Plaintiffs Allege a Less Than Three Percent Variation in Their Joint and Survivor Annuity, Which Is Reasonable as a Matter of Law Under the <u>Regulations Cited by Plaintiffs.</u>**

     Even if ERISA authorized a cause of action challenging the "reasonableness" of the

Plan's actuarial factors for calculating joint and survivor annuities in general, and even if the

regulations cited by Plaintiffs provided a basis for asserting claims, Plaintiffs' claims would still

fail as a matter of law because they have pled themselves out of court.

     The term "reasonable" necessarily implies that there is no single set of actuarial

assumptions that is required – even under Plaintiffs' theory.  Plaintiffs admit as much in their

Complaint.  Compl. ¶ 29 (noting that current market rate assumptions may be used, but that plans

also can use other actuarial assumptions).  The Second Circuit has recognized this principle in

circumstances where Congress specifically requires actuaries to select assumptions that are

"reasonable" for plan funding purposes.  *See, e.g.*, *Wachtell, Lipton, Rosen & Katz v. C.I.R.*, 26

F.3d 291, 296 (2d Cir. 1994) (in a dispute between a plan sponsor and the IRS, holding that 26

U.S.C. § "412(c) is not violated when an actuary chooses an assumption that is within the range of reasonable assumptions, even when the assumption is at the conservative end of that range").[8]

Here, Plaintiffs allege that they each elected the Plan's QJSA, which is the 50% joint and survivor annuity.  *See* Compl. ¶¶ 39, 48 (stating that the QJSA for the Plan is a 50% joint and survivor annuity and Plaintiffs are each receiving the QJSA).  Plaintiffs further allege that the Plan's actuarial factors resulted in a *less than three percent difference* from the annuity they claim "would be generated using reasonable market interest and mortality rates."  Compl. ¶ 47.[9]  Such a three-percent difference, however, is reasonable as a matter of law even under the regulations cited in Plaintiffs' Complaint.

Specifically, the Treasury Regulation governing relative value makes clear that any difference of five percent or less in value is not only reasonable, but is deemed "approximately equal in value."  26 C.F.R. § 1.417(a)(3)-1(c)(2)(iii)(C).  The regulation states:

> The relative value of all optional forms of benefit that have an actuarial present value that *is at least 95% of the actuarial present value of the QJSA and no greater than 105% of the actuarial present value of the QJSA is permitted to be described by stating that those optional forms of benefit are approximately equal in value to the QJSA*, or that all of those forms of benefit and the QJSA are approximately equal in value.

*Id.* (emphasis added). Plaintiffs quote and cite this regulation (although not this portion) in their Complaint.  Compl. ¶ 31.  The facts alleged here are precisely the circumstances that the

---

[8]     *See also, e.g.*, *Vinson v. Elkins v. C.I.R.*, 7 F.3d 1235, 1240 (5th Cir. 1993) (affirming conclusion that actuarial assumptions were reasonable and noting that "[t]he Commissioner's rigid approach here conflicts with the flexibility allowed by the regulations and the statutory reasonableness test") (footnote omitted).

[9]     Plaintiffs also allege that benefits could be nearly 8% lower for a 100% joint and survivor annuity, Compl. ¶ 47.  Because none of the Plaintiffs elected a 100% joint and survivor annuity, that allegation is irrelevant to Plaintiffs' claims.

Treasury Department says results in benefits that are "approximately equal in value."  That is reasonable as a matter of law.[10]

### D.   **Plaintiffs' Breach of Fiduciary Duty Claim Fails as a Matter of Law.**

Plaintiffs' breach of fiduciary duty claim (Third Claim for Relief) is duplicative of their other claims and accordingly fails for the same reasons.  Plaintiffs do not allege that the fiduciaries failed to follow the Plan's terms, or misled them about their benefits.  Instead, they simply allege that the fiduciaries should have disregarded the Plan's terms because they were not "reasonable."  This claim fails as a matter of law for all of the reasons set forth above, including the fact that the Treasury Regulation governing relative value makes clear that a three percent difference is not only reasonable, but approximately equal.  Therefore, this claim should be dismissed for that reason and all the other reasons discussed above.  *See Suozzo*, 2003 WL 256788, at *2 (granting motion to dismiss breach of fiduciary duty claim for violation of Code section 401 and its regulations, explaining that "the Plan itself does not require compliance with the IRC's non-discrimination requirement" and there is no private right of action to enforce Code section 401 or its regulations).

## V.   **CONCLUSION**

For each and all of the forgoing reasons, Defendants respectfully request that the Complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

---

[10]   In adopting this rule, the Treasury Department rejected the suggestion that differences of 3% or more should not be considered approximately equal in value in favor of the broader 5% standard.  *See* Disclosure of Relative Values of Optional Forms of Benefit, 68 Fed. Reg. 70,141-01, at 70,142-43 (Dec. 17, 2003).  The Treasury Department also included examples of circumstances where benefits had values that differed by 7% to 12%.  *See* 26 C.F.R. § 1.417(a)(3)-1(e), Example 2(ii); Notice of Proposed Rulemaking, Proposed Regulations, NPRM REG-124667-02, I.R.B. 2002-44, 791 (Oct. 7, 2002).

Respectfully submitted,

Dated:  February 15, 2019

*s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5258
jeremy.blumenfeld@morganlewis.com

Stephanie R. Reiss
(*pro hac vice forthcoming*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Oxford Centre, 32nd Floor
Pittsburgh, PA  15219
(412) 560-3378
stephanie.reiss@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of February, 2019 a true and correct copy of the foregoing Defendants' Memorandum of Law in Support of Motion to Dismiss the Complaint was served via the Court's ECF filing system on the following:

Douglas P. Needham
Robert A. Izard
Seth R. Klein
IZARD, KINDALL & RAABE LLP
29 South Main St., Suite 305
West Hartford, CT 06107
dneedham@ikrlaw.com
rizard@irkrlaw.com
sklein@ikrlaw.com

Mark G. Boyko
BAILEY AND GLASSER LLP
8012 Bonhomme Avenue, Suite 300
Clayton, MO  63105
mboyko@baileyglasser.com


s/ *Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld